# AFFIDAVIT IN SUPPORT OF
# A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Christopher C. Musick, Task Force Officer ("TFO") with the United States Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

## Introduction and Agent Background

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of the federal drug laws in Title 21.

2. I have been a DEA TFO since February 2021, assigned to DEA Boston Tactical Diversion Squad ("TDS"). As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of the federal drug laws in Title 21 of the United States Code, and to execute arrest warrants. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. I am currently a Westford Police Narcotics Detective with the Westford Police Department Special Services Division, and have served in that capacity since December 2014. As a Detective, I was assigned to investigate cases involving Vice and Narcotics. In addition, I am currently a member of the DEA Clandestine Lab Enforcement Team, which specializes in investigating, seizing, and dismantling illegal clandestine drug labs. Prior to my employment with the Westford Police Department, I was a patrol officer for the Walpole Police Department between September 2010 and December of 2012. While employed by the Walpole Police Department, I

was assigned as the Traffic Safety Officer as well as an Investigator in the field of Collision Reconstruction.

4.  Prior to my employment with the Walpole Police Department, I held the position of patrolman for the Wayland Police Department between August 2006 and Sept of 2010.  I was assigned as a patrol officer and an Investigator in the field of Collision Reconstruction.  Before joining the Wayland Police Department, I held the position of Military Police Officer in the United States Marine Corps.  I was enlisted in the United States Marine Corps from May of 2001 to May of 2005, and held several positions from patrolman to shift supervisor.  I completed a 21-week Police Academy program where I was trained how to investigate various types of criminal investigations. I have also attended training courses that have involved crime scene photography, crime scene processing, evidence collection and preservation, and interview and interrogations.

5.  I have attended a 40-hour training through BBS Narcotics Enforcement Training and Consulting. I have also attended the Drug Enforcement Administration (DEA) 80-hour Basic Narcotics School.  I have attended 80 hours of training with the Tewksbury Narcotics Unit and 80 hours of training with the Lowell Narcotics Unit where I participated in surveillance, buys, debriefings, CI handling, motor vehicle and residential searches. I have attended the DEA 40-hour Clandestine Drug Lab training in Quantico, Virginia.  I have participated in multiple arrests, issuance of criminal complaints and seizure of evidence in various types of crimes to include but not limited to bank robberies, breaking and entering, serious motor vehicle collisions, prostitution and narcotics.  I have observed numerous types of controlled substances and am familiar with the packaging, paraphernalia, price structure, manufacturing and distribution methods and street jargon associated with their sale and use.  I have been the affiant in over 100 previous search warrants.

6. As a DEA TFO assigned to TDS, my responsibilities include the investigation of possible violations of federal law, including major drug trafficking organizations and money laundering organizations related to criminal enterprises. I have received specialized training regarding the activities of drug traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by drug traffickers to conceal and launder the proceeds of their narcotics-trafficking activities. Over the course of my law enforcement career, I have debriefed numerous defendants, informants, and witnesses with personal knowledge about drug-trafficking and the operation of drug-trafficking organizations. I have personally participated in all aspects of drug-trafficking investigations, including conducting surveillance, using confidential informants, and conducting court-authorized interceptions of wire communications. I have also participated in joint investigations with the DEA, Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), and numerous state and local agencies.

7. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

8. I have sworn out affidavits in support of search warrants, arrest warrants, and other Court applications. A number of those investigations resulted in arrests, indictments, and convictions for violations of drug laws and/or other criminal offenses, the seizure of drugs, money, and vehicles, and the forfeiture of personal property.

9. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking. I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

**Probable Cause for Complaint and Arrest Warrant**

10. This affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging Miguel FAJARDO ("FAJARDO") with a violation of Title 21, United States Code, §§ 841(a)(1) and (b)(1)(A)(vi), and in particular, with intentionally possessing with intent to distribute 400 grams or more of a mixture and substance containing a detectible amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance. Accordingly, it does not contain every detail that I and other law enforcement officers have learned during the course of this investigation, but only facts sufficient to establish probable cause in support of a criminal complaint and arrest warrant.

11. I have personally participated in this investigation. I have personally participated in this investigation since approximately January 2022. The facts in this affidavit come from my

personal observations, my training and experience, surveillance, and information obtained from other agents and witnesses.

12. On or about March 24, 2022, investigators obtained a search warrant for the apartment unit located in the building situated at 9/11 Falmouth Street in Lawrence, Massachusetts, accessed by the door closest to the rear of the building on the right/east side and located on the second floor (hereinafter, the "TARGET LOCATION").

13. On March 25, 2022, at approximately 6:30 a.m., I along with other law enforcement officers went to the TARGET LOCATION in order to execute that search warrant. Upon entering the building, investigators proceeded to the second floor and entered the TARGET LOCATION. Inside, the sole occupant in the one-bedroom apartment was FAJARDO.

14. Investigators found the following inside the apartment:

a. An industrial pill press and two sets of stamps for use with the pill press to manufacture pills imprinted with an "M" and a "30" located in the bedroom (based on my training and experience, I am aware that drug traffickers commonly press powder fentanyl, binding agent, and cutting agent into pill form for distribution; and I am also aware that drug traffickers frequently use stamps designed to make the resulting fentanyl pills appear to be pharmaceutical-grade pills containing Oxycodone rather than fentanyl);

b. Suspected powder fentanyl weighing approximately 1.5 kilograms (concealed within a microwave oven located in the bedroom);

c. A box containing approximately fifty rounds of .40 caliber ammunition (also concealed within a microwave oven located in the bedroom);

d. An additional estimated four kilograms of cutting agent and/or binding powder (based on my training and experience, I am aware that drug traffickers commonly use cutting

agent to mix with drugs like fentanyl in order to decrease the potency and increase the supply of fentanyl and other drugs for distribution; I am also aware that drug traffickers commonly also mix binding powder with drugs to allow the pills to hold together when manufactured in a pill press);

e. A white plastic jar containing a tan powder, which based on my training and experience I believe to be either additional powder fentanyl and/or cutting agent (located in the living room closet of the apartment);

f. An estimated 90-100,000 suspected fentanyl pills marked with an "M" and a "30", weighing an estimated seven kilograms or more located in a brown box in the living room closet (based on my training and experience, I believe that these pills are consistent with pills pressed using a pill press like the one found in the apartment together with the M-30 stamps described above);

g. Two individual finger presses, each capable of producing two "fingers" simultaneously located in the living room closet (based on my training and experience, so called "finger presses" are commonly used by drug traffickers to facilitate transportation and distribution of 10-gram sized quantities of fentanyl, heroin, and other drugs);

h. Two air purifying respirators ("APR") with dual air-cartridges located in the television stand in the living room (based on my training and experience, APRs are essentially masks that cover the wearer's nose and mouth designed for use when working with aerosolized chemicals and/or particulates that would be dangerous to inhale; based on my training and experience, I am aware that drug traffickers commonly use such masks and other protective equipment when working with powder fentanyl it is highly dangerous when inhaled;

    i. Suspected drug ledgers in the television stand in the living room.

    j. Rent receipts for the apartment in the television stand in the living room

    k. A National Grid bill in the name of Melania De La Cruz addressed to "11 Falmouth Street Rear 2 2 Rear [sic] Lawrence Massachusetts" located in the television stand in the living room.

    l. A passport from the Dominican Republic with FAJARDO's name, date of birth, and photograph located in the bedroom.

15. In addition, investigators located in a closet in the landing outside the apartment another large pill press and two kilogram presses (based on my training and experience, so-called "kilo presses" are commonly used by drug traffickers to compress fentanyl and other drugs in powder for to facilitate transportation and distribution of kilogram-sized quantities of fentanyl, heroin, and other drugs).

16. 

17.


18.


## Conclusion

19. Based on the foregoing facts, there is probable cause to believe that on or about March 25, 2022, FAJARDO knowingly and intentionally possessed with intent to distribute 400 grams or more of a mixture and substance containing a detectible amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance. Accordingly, I respectfully request that both a criminal complaint and an arrest warrant be issued.

Respectfully submitted,

*Christopher Musick*
Christopher C. Musick
Task Force Officer
Drug Enforcement Administration

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on March 25, 2022

Hon. Donald L. Cabell
United States Magistrate Judge